[Cite as *In re T.W.*, 2013-Ohio-2769.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: T.W. and V.W.

Appellate Case No.    25538

Trial Court Case No.   JC2009-6608
                                       JC2009-6609
(Civil Appeal from Common
Pleas Court - Juvenile Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of June, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery
County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for State of Ohio-Montgomery County Children Services-Appellee

KATE L. BOWLING, Atty. Reg. No. 0084442, 111 West First Street, Suite 518, Dayton, Ohio 45402
        Attorney for Jennifer W.-Appellant

JEFFREY LIVINGSTON, Atty. Reg. No. 62422, 120 West Second Street, Suite 2000, Dayton, Ohio
45402
        Attorney for Nathan W.

STEPHANIE ALLEN, Atty. Reg. No. 80207, 3640 Colonel Glenn Highway, B105 Student Union,
Dayton, Ohio 45435
         Attorney for Minor Children

 CHRISTOPHER EPLEY, 124 East third Street, Suite 300, Dayton, Ohio 45402

Guardian Ad Litem

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Appellant, Jennifer W., appeals from a judgment terminating her parental rights and granting permanent custody of her minor children, T.W. and V.W., to the Montgomery County Children Services (MCCS).  Jennifer contends that the trial court improperly granted custody of the children to MCCS because reunification with the parents was possible.

{¶ 2}     We conclude that Jennifer's failure to raise any objections in the trial court, other than to the denial of a continuance, waived any other errors, except plain error.  Furthermore, we construe Jennifer's sole assigned error as a manifest weight challenge.  Due to the deference that appellate courts must give to factual findings by a finder of fact, and the weighing of evidence that is required to assess a claim that a judgment is against the manifest weight of the evidence, the contention that the trial court's judgment is against the manifest weight of the evidence does not rise to the level of plain error.  Finally, while a review of the record is not required, we have examined the entire record, and find no error in the decision awarding permanent custody of the children to MCCS.  Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 3}     MCCS caseworker, Jennie Geer, was the ongoing caseworker for Jennifer W.'s minor children, T.W. and V.W., from July 2008 through October 2010.  Geer developed a case plan for the family and met with Jennifer in July 2009 to discuss the plan.  At the time, Jennifer

was attending Project Cure for treatment of her heroin addiction. The use of heroin was very open in the home, and the children knew about it. They also knew how to shoot heroin after having observed their mother doing so. Jennifer was not compliant with treatment of her addiction, and admitted using heroin capsules daily while receiving methadone at Project Cure.

{¶ 4}     MCCS first asked the juvenile court to grant protective supervision, but later asked for temporary custody, based on additional allegations. In particular, Jennifer had pled guilty to forgery and was to be sentenced on September 23, 2009. If Jennifer were not sent to prison, she would be entering inpatient substance abuse treatment and would not be able to care for her children. The father of the children also could not be located. Subsequently, MCCS asked the court for an ex parte order of temporary custody of the children, due to additional claims of sexual abuse.

{¶ 5}     On September 17, 2009, the trial court granted MCCS temporary custody of T.W. and V.W., due to the allegations of sexual abuse by the children's paternal cousins and Jennifer's failure to attend to her substance abuse issues. The children's home was also infested with roaches and lice. The children were removed from the home and were placed in foster care. At the time, T.W. and V.W. were seven and five years old, respectively.

{¶ 6}     In late September 2009, Jennifer was sentenced to community control on the condition that she complete the MonDay Program. However, Jennifer was picked up for an outstanding warrant for driving under suspension and was taken to jail, where she remained until November 2009. Jennifer was then released to attend the MonDay Program. However, she was unsuccessful with that program and was discharged in March 2010. Jennifer was then required to serve the remainder of her sentence in prison. She was discharged from prison in October

2010.

{¶ 7}     T.W. and V.W. were placed in a foster home from September 2009 until June 5, 2010, when they were removed and placed in the home of another set of foster parents. They remained in that home, which was not an adoptive home, until permanent custody was granted to MCCS.   The foster parents indicated that they would keep the children until an adoptive family could be found.

{¶ 8}     T.W. and V.W. had severe issues.  The sexual abuse was substantiated, and V.W. had a very difficult time in the first foster home, where she killed a hamster, stabbed a cat with a fork, and attempted to kill a dog.  She also had self-harming behavior.  Both children were very regressed academically, and both were eventually treated for Type II complex chronic trauma and reactive attachment disorder.

{¶ 9}     In addition, the children had very sexualized behaviors.  They had sexually acted out on each other, such that the foster mother had to place alarms on their doors to prevent them from going into each others' rooms.    There were also issues at school, with T.W. acting out violently at times.  Both children were in therapy throughout the course of the case and would need to continue in therapy.  Even after therapy, they would have special needs.  Their behaviors had improved, however, during the time they lived with their second foster family.

{¶ 10}    While Jennifer was in prison, she obtained a GED, and completed life skills and parenting classes, which were a required part of the MCCS case plan.   After being released from prison in October 2010, Jennifer was referred by MCCS to the Sojourner Program, which is a drug and alcohol addiction program used primarily for reunification of children with mothers who have lost children to Children's Services or who are at high risk of losing their children.

Jennifer began working with the Sojourner Program in November 2010. Through participation in this program, Jennifer was able to obtain free housing at DeSoto Bass, a Dayton Metropolitan Housing Authority project.

{¶ 11} Jennifer was not compliant with the Sojourner Program, and was not forthcoming about substance abuse issues. At the time of the first permanent custody hearing on September 27, 2011, Jennifer had tested positive for opiates in March 2011, again in May 2011, and again in June 2011. Jennifer claimed to have medical problems for which she sought medication, but she had not consulted a physician for medical treatment, other than obtaining medication from an emergency room physician in June. She obtained other drugs illegally, from the streets.

{¶ 12} The Sojourner Program assigned Jennifer to two outpatient groups a week, plus individual therapy. The group meetings were held at DeSoto Bass, within walking distance of Jennifer's apartment. However, Jennifer had attended both groups during the same week only twice during the entire course of treatment. In addition, for two months, Jennifer did not attend any groups.

{¶ 13} Jennifer also had not been attending individual therapy sessions as required. The last such session she had attended was nearly a month before the September 2011 permanent custody hearing. Jennifer did not attend any sessions in September and was at risk of being discharged from the program. Upon discharge, Jennifer would lose her housing.

{¶ 14} Women enrolled in the Sojourner Program are given 250 points when they begin the program. Deductions are taken for missing meetings, and points can be earned by complying with meeting requirements, by passing housing inspections, and so forth. At the time

of the September 2011 hearing, Jennifer had a balance of negative 450 points.

{¶ 15}    Jennifer also had a psychological assessment in February 2011, which was done over the course of three sessions.  Jennifer was 45 minutes late to the first session, was two hours late for the second, and missed a third, which had to be rescheduled.  The psychologist indicated that she did not think Jennifer was capable of independently parenting her children, but could develop parenting skills if she followed various recommendations, which included the treatment at the Sojourner Program.  In addition, the psychologist noted that Jennifer did not have a full grasp of the level of behavior problems of her children, was very dependent on others, and was not able to make it on her own at the time of the assessment.

{¶ 16}    Jennifer did visit the children when she was not involved with in-patient treatment or when she was in prison.  Jennifer's mother also visited the children, but neither the grandmother nor a maternal aunt was willing or able to take custody.  MCCS also investigated some paternal relatives, but the children's therapist recommended that the children not have contact with the paternal side of the family, since the sexual abuse had occurred there.

{¶ 17}    Finally, the children's father, Nathan W., was located in Kentucky.  The father did not express any interest in pursuing custody.  MCCS was never able to observe his housing, as he did not make himself available very often.  In May 2010, Nathan told the caseworker that he had not seen the children in two years, and had not spoken with them since they entered foster care.  In July 2010, MCCS learned that Nathan was incarcerated.  He was charged with first degree rape, first degree sodomy, and other offenses that had occurred in Christian County, Kentucky.  After pleading guilty to reduced charges of unlawful transactions with a minor, unlawful imprisonment, and unlawful sexual acts, Nathan was sentenced to concurrent terms of

three years in prison. He did not appear for any of the hearings and did not appeal from the termination of his parental rights.

{¶ 18} After hearing testimony from several witnesses, the trial court continued the permanent custody hearing until November 15, 2011. At the November 2011 hearing, an MCCS caseworker reported that Jennifer had been arrested on October 6, 2011, and had been charged with resisting arrest, obstruction of official business, and making false alarms. Jennifer was subsequently convicted of falsification, a first degree misdemeanor, and was referred to the Access II program for a mental health assessment on November 9, 2011. However, Jennifer did not attend that appointment. Jennifer also gave conflicting accounts of what had happened to cause her arrest.

{¶ 19} The magistrate heard testimony from Jennifer, who indicated that her only source of income is a $66 per month subsidy from the public housing authority for payment of utilities, and $55 per week for selling plasma. She had also applied for social security, but her application had been denied. Jennifer's last known employment was in 2006. Jennifer indicated that she had attempted to contact the children's therapist after the last hearing, but had been unable to get through.

{¶ 20} After hearing the evidence, the magistrate concluded that the children could not and should not be placed with either parent, and that granting permanent custody to MCCS was in the best interests of the children. Jennifer filed objections to the decision, but her sole stated objection involved the magistrate's refusal to continue the hearing so that a home study could be conducted on two maternal relatives who wished to be considered as possible custodians of the children.

{¶ 21}    In November 2012, the trial court issued a decision overruling Jennifer's objection.    The trial court first addressed the issue of the continuance and found it without merit.  The court then discussed whether the State had presented clear and convincing evidence that permanent custody to MCCS was in the best interests of the children.    The court concluded that such evidence had been presented, and adopted the decision of the magistrate.  Jennifer appeals from the judgment terminating her parental rights.

## II.   Did the Trial Court Err in Granting Permanent Custody to MCCS?

{¶ 22}    Jennifer's sole assignment of error states as follows:

The Trial Court Erred in Granting Permanent Custody to Montgomery County Children Services Because That Agency Failed to Prove by Clear and Convincing Evidence That Permanent Custody Was in the Best Interest of the Minor Children.

{¶ 23}    Under this assignment of error, Jennifer contends that reunification was possible at the time of the permanent custody hearing, because she had completed or was making progress on all of her case plan objectives.   In response, MCCS argues that Jennifer waived this claim by failing to assert it in her objections to the magistrate's decision.  MCCS also maintains that Jennifer's claim lacks merit.

{¶ 24}    Juv.R. 40(D)(3)(b)(iv) provides that:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R.

40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶ 25}** "The purpose behind the appellate waiver rule is to ensure that the trial judge shall have an opportunity to correct any errors occurring in the trial judge's court, the only exception being for plain error." *In re M.G.*, 2d Dist. Miami No. 07-CA-6, 2007-Ohio-3589, ¶ 15.

**{¶ 26}** In *M.G.*, a father appealed from termination of his parental rights, and argued that the decision awarding permanent custody to the agency was not supported by clear and convincing evidence. *Id.* at ¶ 11. However, the father had not objected to the magistrate's decision. *Id.* at ¶ 2. We interpreted the father's argument as a contention that the trial court's decision was against the manifest weight of the evidence. *Id.* at ¶ 12.

**{¶ 27}** The case before us presents a somewhat different situation than *M.G.*, because a transcript of the magistrate's proceeding was filed in the trial court, and the trial court did consider the merits of the magistrate's decision. However, the court did so of its own accord, not because Jennifer alerted the court to possible errors in the magistrate's decision.

**{¶ 28}** Because Jennifer failed to raise any objections, other than to the denial of a continuance, we are compelled to conclude that she waived any other errors, except plain error. Furthermore we must also conclude that the error Jennifer has alleged did not rise to the level of plain error.

**{¶ 29}** Although we refused to consider plain error in *M.G.*, we also noted that we had reviewed the entire transcript and had concluded that the decision awarding permanent custody to the agency was not against the manifest weight of the evidence. *Id.* at ¶ 18. We followed the

same approach in the case of *In re H.K.*, 2d Dist. Miami No. 2010 CA 24, 2011-Ohio-753, ¶ 23.

{¶ 30}   Applying the same reasoning here, we have reviewed the entire record and find no error in the decision awarding permanent custody to MCCS.   The magistrate and trial court made all the required findings under R.C. 2151.414, and there is competent and credible evidence, as outlined above, to support the findings.   Despite repeated attempts by MCCS and other public agencies that offered support, Jennifer was unable or unwilling to make even minimal efforts to place herself in a position to adequately care for her minor children and to address their needs, which are severe.

{¶ 31}   Based on the preceding discussion, Jennifer's sole assignment of error is overruled.

### III.   Conclusion

{¶ 32}   Jennifer's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Kate L. Bowling
Jeffrey Livingston
Stephanie Allen
Christopher Epley
Hon. Anthony Capizzi